# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES OURY, ROBERT OURY, AND JR RANCH, INC., | ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-03580 |
| v. | ) ) ) | Judge Edmond E. Chang |
| RAVENNA, LLC, JOHN ARNOLD, AND THE FOREST PRESERVE OF KANE COUNTY, ILLINOIS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Oury is the former owner of Indian Hills Training Center, a horse stable located in Kane County, Illinois.[1] R. 28, Am. Cmplt. ¶¶ 10-11.[2] Robert's son, James Oury (also a plaintiff), rented a home on the Indian Hills land. *Id.* ¶ 10. After a foreclosure, Ravenna became the owner of the land, and eventually sold it to the Kane County Forest Preserve. *Id.* ¶¶ 15-17, 64. This case involves various state and federal claims arising from the defendants' alleged efforts to (in Plaintiffs' words) "pillage and conquer" the Indian Hills property and James's home after the foreclosure. R. 43, Pl. Cons. Resp. at 1. But the Amended Complaint does not state a viable federal claim, as argued in Defendants' respective dismissal motions, R. 31,

---

[1]This Court has subject matter jurisdiction over the federal claim in this case under 28 U.S.C. § 1331 and supplemental jurisdiction over at least some of the state-law claims under 28 U.S.C. § 1367. As explained in the Opinion, it is not necessary to definitively decide the applicability of supplemental jurisdiction, because the Court relinquishes whatever jurisdiction it has over the state-law claims.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

33, 35, and without a federal claim in the case, the Court relinquishes jurisdiction over the remaining state-law claims.

## I. Background

For the purpose of deciding the dismissal motions, the Court accepts the factual allegations in the Amended Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Indian Hills stable and horse training facility was located on around 280 acres of land in Gilberts, Illinois. Am. Cmplt. ¶ 10. James Oury rented a house on 3.88 acres of the Indian Hills property; he and his family lived in the house. *Id*. The Oury family had operated the stable since 1986, but lost the land to a foreclosure in February 2014. *Id*. ¶¶ 10, 15. In March 2014, Defendant Ravenna purchased Indian Hills at a judicial sale. *Id*. ¶¶ 15-17. Either before or shortly after the judicial sale, the Forest Preserve of Kane County contacted Ravenna about buying the property. *Id*. ¶ 17.

But this deal apparently was not finalized for a couple years. During the intervening time, Ravenna hired Defendant Arnold (a rival horse farmer) to manage Indian Hills. Am. Cmplt. ¶ 18. Arnold, acting either on his own or in cahoots with Ravenna, allegedly concocted a scheme to pressure James Oury into giving up the home he rented (which was located on a portion of the Indian Hills property). *See id*. ¶¶ 21-23, 47-49. The alleged scheme comprised Arnold engaging James Oury to supply horse-farm related services and hay, *id*. ¶¶ 21-23, but then not paying James in full after James had provided the services and the hay, *id*. ¶¶ 47-49. This allegedly painted James into a financial corner, giving Arnold and Ravenna the

2

leverage to demand that James agree to an order of possession requiring him to vacate the home. *Id.* ¶¶ 21, 51.

The gist of James Oury's federal claim is that Ravenna and the Forest Preserve destroyed personal property, without due process, that James and his family had left inside the house after their eviction. *See* Am. Cmplt. ¶¶ 77-78. James alleges that he and his family were forced to vacate their home at 8:00 a.m. on December 2, 2016. *Id.* ¶ 51. The Kane County Sheriff directed James and his family to remove their possessions from the home on the day of the eviction. *Id.* ¶ 52. Four hours later, Ravenna locked the home with many of James's possessions still inside. *Id.* ¶ 53. James was not allowed to remove any items after noon on December 2, even though Arnold and a Ravenna representative were inside the house and presumably could have allowed James to go inside. *Id.* ¶ 54. According to James, Ravenna never removed the remaining possessions from the home, and never arranged for James or his family to retrieve the items. *Id.* ¶ 55. James even asked Arnold to allow him access to the house to remove his property, but Arnold never responded. *Id.* ¶ 56.

On December 8, 2016, Ravenna allowed Forest Preserve staff to inspect the now-vacant home. Am. Cmplt. ¶ 57. James alleges that his possessions were still inside the home when the Forest Preserve representative inspected it. *Id.* ¶ 59. James further alleges that the Forest Preserve and Ravenna had an "understanding" dating from Summer 2016 that the house would be demolished after James was evicted. *Id.* ¶ 59. After the December 8th inspection, the Forest

3

Preserve confirmed to Ravenna that the house should be demolished. *Id.* ¶ 60. Ravenna coordinated the demolition of the home, which took place in February 2017. *Id.* ¶ 61. James's possessions were still inside the house when it was demolished. *Id.* ¶ 62. After the demolition, the Forest Preserve closed on its purchase of the land. *Id.* ¶ 64.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Due Process

The sole federal claim in this case is that Ravenna and the Forest Preserve violated James's Fourteenth Amendment right to due process of law when Ravenna demolished the home with James's possessions still inside. *See* Am. Cmplt. ¶¶ 76-77. There is a problem with this theory: 42 U.S.C. § 1983 (the cause of action under which the constitutional claim is brought) only provides a claim for constitutional violations carried out "under color of state law." *West v. Akins*, 487 U.S. 42, 48 (1988). Ravenna—the entity that actually destroyed the house and the property within—is a private company. The Ourys, however, argue that the Forest Preserve's involvement is enough to deem Ravenna's actions under color of law, either because Ravenna and the Forest Preserve acted together, or because the Forest Preserve "coerced" Ravenna. *See* Pl. Cons. Resp. at 6.

It is well established that private conduct can be deemed state action when state and private actors act jointly to deprive a person of constitutional rights. *See, e.g.*, *Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 468 (7th Cir. 2016); *Hallinan*, 570 F.3d at 815. But it is also well established that "a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015)

5

(quoting *Messman v. Helmke*, 133 F.3d 1042, 1045 (7th Cir. 1998)). In this case, there are no well-pleaded *facts*—as distinct from *conclusions*—to support a claim that Ravenna and the Forest Preserve acted together to destroy James's personal property. The closest the complaint comes is the allegation that the Forest Preserve's agent inspected the house in December 2016, saw the personal property inside, and confirmed that Ravenna should demolish the house. *See* Am. Cmplt. ¶¶ 57-60. But none of this plausibly implies that the Forest Preserve sought to destroy James's possessions without due process. The Forest Preserve's agent would have no way of knowing, when he inspected the home, that the possessions inside had not simply been abandoned by James and his family when they moved out. The Ourys do not allege that the Forest Preserve knew that Ravenna locked James out of the house and prevented him from retrieving his possessions on the day of the eviction. What's more, there is no allegation that the Forest Preserve knew that the property was still inside the home when it was demolished around three months later: the Forest Preserve inspected the dwelling in December 2016, but the demolition occurred in late February 2017. Am. Cmplt. ¶¶ 57, 61-62. So far as the allegations say, the Forest Preserve did not carry out or supervise the demolition; that was all Ravenna's doing. *See* Am. Cmplt. ¶ 61. There are simply no facts suggesting that the Forest Preserve knew that the personal property in the house was going to be destroyed. On these allegations, there is no plausible inference of a joint intention to violate James's due process rights by destroying his personal property.[3]

---

[3]Indeed, whether there is an underlying due process violation is also not clear from

There are likewise no factual allegations stating a plausible claim that the Forest Preserve "coerced" Ravenna into destroying James's possessions. The Ourys' brief suggests that the Forest Preserve somehow leveraged its right of first refusal on the Indian Hills property to force Ravenna to destroy James's property. *See* Pl. Cons. Resp. at 8-9. But this theory does not appear in the Amended Complaint, which does not even mention the Forest Preserve's right of refusal. The Ourys may not amend their complaint in their response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). And even if the facts in the complaint were enough to allege that the Forest Preserve encouraged Ravenna to demolish the house itself, they do not plausibly suggest that the Forest Preserve encouraged or coerced Ravenna to destroy the *possessions* inside the house.[4] As discussed earlier, the allegations in the complaint do not suggest that the Forest Preserve exercised any control over the manner of the

---

the Amended Complaint. By James's own account, the eviction was pursuant to an *agreed* order, so he clearly had notice of the eviction. Am. Cmplt. ¶ 51. The copy of the agreed judgment for possession provided by the Ourys is dated August 4, 2016, and eviction did not occur until December 2, 2016, which would have given James ample time to remove his possessions from the house. R. 47, Oury. Mem. in Support of Mot. Dismiss Counterclaim, Exh. 1. Even on the day of the eviction, he had at least four hours to move out. *See* Am. Cmplt. ¶¶ 52-53. But perhaps the Amended Complaint can be read to allege that James was entitled to the *entire* day of December 2, 2016 to remove his possessions, and Ravenna wrongly cut that time short by locking him out early. *See* Am. Cmplt. ¶¶ 51-54. That might state a very narrow due process claim (though even then, it is unclear what is the basis to conclude that James did not have enough time to move his things out before December 2) if Ravenna's action could be considered state action.

[4]The alleged due process violation in this case must relate to the personal property, not the destruction of the house itself. Any due process challenge to the destruction of the house would require challenging the state court judgment of possession, and would be barred by the *Rooker-Feldman* doctrine. *See, e.g., Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532-33 (7th Cir. 2004) (claims that indirectly seek to set aside a state court judgment are barred by *Rooker-Feldman*).

demolition, so there is no reason to think that the Forest Preserve was responsible for the decision to leave James's possessions inside the house as it was demolished.

All in all, on the *facts* in the Amended Complaint—as opposed to the conclusory allegations—there is no plausible claim that the Forest Preserve either acted jointly with Ravenna, or pressured Ravenna to destroy James's belongings. Accordingly, the Amended Complaint does not adequately allege that Ravenna acted under color of law, and therefore does not state a viable § 1983 claim against either Ravenna or the Forest Preserve.

### B. State-Law Claims

With the Ourys' only federal claim out of the picture, all that remains are their state-law claims. When all federal claims have been dismissed, the presumption is that the federal district court will relinquish jurisdiction over the related state-law claims. *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam). There is no reason to depart from that presumption in this case: the Illinois Code of Civil Procedure eliminates any concern about the statute of limitations, *see* 735 ILCS 5/13-217, and there are no significant efficiency concerns in favor of resolving the remaining state-law claims in federal court. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009) (discussing exceptions to the presumption that the court should relinquish jurisdiction). Relinquishing jurisdiction also serves the interests of comity. This case involves some uncertain issues of Illinois law (like the viability of the contract claim (Count 2) and what duty (if any) Ravenna owed to James on these facts to avoid

8

negligence (Count 6)), and respect for Illinois's interest in developing its own law is paramount. *See Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) (noting that, when all federal claims have been dismissed, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns.").[5] The Court also relinquishes jurisdiction over Ravenna's counterclaims, which are entirely based on state law. *See* R. 37, Ravenna Counterclaim. The relinquishment of jurisdiction makes it unnecessary to decide Arnold's motion to dismiss certain state-law claims, R. 33; the Ourys' motion to dismiss Count 3 of the counterclaims, R. 46; and Ravenna's partial motion to dismiss based on Rule 21 misjoinder, R. 38.

### C. Motion for Sanctions

Ravenna brought a Rule 11 Motion for Sanctions against James Oury, arguing that Oury's motion to dismiss Ravenna's third counterclaim was frivolous and argued in bad faith. *See generally* R. 64, Ravenna Mot. Sanctions. To quickly summarize, James had moved to dismiss on the grounds that Ravenna's counterclaim for holdover rent was barred by a purported "settlement agreement." R. 47, Oury Mem. in Support of Mot. Dismiss Counterclaim at 2-3. But this "settlement agreement" was really just an agreed order stating that each party would bear its own costs, and so did not unambiguously release a possible claim for holdover rent. *See* Oury Mem. in Support of Mot. Dismiss Counterclaim, Exh. 1.

---

[5]It's worth noting that Count 11 of the Amended Complaint would have been dismissed for lack of supplemental jurisdiction in any event. That claim relates to Robert's alleged easement over part of the Indian Hills land, but the claim is so distinct from the others that it does not form part of the "same case or controversy" as the other claims. *See* 28 U.S.C. § 1367.

9

James's argument is a clear loser on a Rule 12(b)(6) motion to dismiss, but in light of the potential breadth of the word "costs" (though the litigation context narrows its coverage), it is not so utterly meritless as to be sanctionable. *See Philos Tech., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 917 (7th Cir. 2015) ("A court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless."). Ravenna's motion for sanctions is denied.

## IV. Conclusion

For the reasons discussed, James Oury's due process claim is dismissed, which was the only federal-law claim. So Defendants' respective motions to dismiss, R. 31, 33, 35, are granted as to that claim, which was Count One. The Court relinquishes jurisdiction over the remaining state-law claims and over the counterclaims. The Ourys have already had an opportunity to amend their complaint, *see* R. 27-28, and did not say anything in the response brief about asking leave to amend again. Accordingly, the dismissal is with prejudice. This is the final judgment in the case. The status hearing of January 10, 2018 is vacated.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 7, 2017

10